# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SIKES COOKERS & GRILL, INC., | } | |
| | } | |
| Plaintiff, | } | CIVIL ACTION FILE |
| | } | |
| v. | } | NO. 1:08-CV-0750-JOF |
| | } | |
| VIDALIA OUTDOOR PRODUCTS, | } | |
| INC., *et al.*, | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULES 12(d) AND 56

## INTRODUCTION

This is a motion requesting that the Court dismiss the present action pursuant to Fed.R.Civ.P. 12(b)(6) because Plaintiff Sikes Cookers & Grill, Inc. ("Sikes") has failed to state a claim upon which relief may be granted.  Defendants are entitled to such dismissal, or in the alternative summary judgment pursuant to Fed.R.Civ.P. 12(d) and 56, for at least the following reasons: (1) the Complaint fails to state a claim upon which relief can be granted; and (2) the products marketed and sold by Defendants do not infringe the patents in suit as a matter of law.

The present action arises out of bare allegations by Sikes that grills marketed and sold by Vidalia Outdoor Products, Inc. ("Vidalia") and the other Defendants, infringe U.S. Patent Nos. 6,038,964 (hereinafter "the '964 patent") and 7,320,278 (hereinafter "the '278 patent").[1]  As shown below, the Complaint should be dismissed because it fails to meet the minimum standards for pleading or, alternatively, summary judgment should be granted to Defendants because the products marketed and sold by Defendants completely lack critical elements necessary to infringe either the '964 patent or the '278 patent.

## ARGUMENT

I.    The Court Should Dismiss the Complaint Against the Defendants Because Sikes has Failed to State a Claim Upon Which Relief Can Be Granted.

A.    Legal Standards.

1.    Rule 12(b)(6) allows the Court to terminate fatally flawed lawsuits.

The Federal Rules of Civil Procedure provide that "the following defenses may at the option of the pleader be made by motion … (6) failure to state a claim upon which relief can be granted…." Fed.R.Civ.P. 12(b)(6).  This rule allows trial courts to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and

---

[1]    The patents-in-suit are not attached to the Complaint.  Defendants submit them as Exhibits 1 and 3 to the Declaration of Scott E. Taylor ("Taylor Dec."), attached hereto as Exhibit "B".

2350286v2

trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

      2.     Rule 8 and *Twombly* Require Facts Showing Entitlement to Relief.

In *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court examined the Rule 8 requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed.R.Civ.P. 8(a)(2). The *Twombly* court affirmed that the complaint must "give the defendant fair notice of what the…claim is and the grounds upon which it rests," but rejected the longstanding pleading standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Twombly*, 127 S.Ct. at 1964, 1968-69 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The *Twombly* court noted that the language from the *Conley* decision had been misunderstood and misapplied for more than fifty years and characterized it as now "best forgotten." *Twombly*, 127 S.Ct. at 1969.

*Twombly* teaches that Rule 8 requires a "showing" and not merely a blanket assertion of entitlement to relief. *Id*. at 1965 n. 3. The *Twombly* court set forth the applicable pleading standard:

> While a complaint…does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,… . Factual allegations must be enough to raise a right to relief above the speculative level,…on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and footnote omitted). In order to comply with Rule 8, pleadings must express a "plausible entitlement to relief." *Id*. at 1967. If the complaint does not meet the standard, "this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (citation omitted).

Sikes' patent infringement claims against the Defendants fail to meet the Rule 8 minimum pleading standard and should be dismissed under Rule 12(b)(6). See id. at 1973-74; see, also, *Oxford Asset Management v. Jaharis*, 297 F.3d 1182, 1187-88 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Sikes recites the elements of a claim for direct patent infringement under 35 U.S.C. § 271(a), but it fails to assert any facts that, if taken as true, suggest that Defendants infringe any claim of either of the two patents. Sikes does not identify any infringing product (other than, generically, an unspecified "grill"), and never describes how the accused device supposedly infringes.

-4-

Other district courts, applying the Rule 8 standard in patent infringement cases after *Twombly*, have rejected pleadings with conclusory allegations such as those put forth by Sikes.  <u>See</u> *AntiCancer, Inc. v. Xenogen Corp.*, No. 05-CV-0448, 2007 U.S. Dist. LEXIS 59811, *11 (S.D. Cal. Aug. 13, 2007) (dismissing complaint under *Twombly* where "[p]laintiff has failed to plead any further facts beyond a bare statement of direct and indirect infringement").  <u>See</u>, <u>also</u>, *Halo Elecs, Inc. v. Bell Fuse, Inc.*, No. 2:07-CV-00331, 2007 U.S. Dist. LEXIS 54419, *5 (D. Nev. July 26, 2007) (dismissing complaint because it "fails to allege the manner or means by which Defendants infringe the patents, instead alleging only the legally conclusory allegation that Defendants 'have been and are infringing' the patents, without any factual allegations in support").  <u>Contra</u> *CBT Flint Partners, LLC v. Goodmail Sys., Inc.*, 529 F.Supp.2d 1376 (N.D. Ga. 2007)(Thrash, J.)(denying motion to dismiss based on finding that *Twombly* does not alter pleading standards); <u>but</u> <u>cf</u>. *Mizzaro v. The Home Depot, Inc.*, U.S. District Court, N.D. Ga., Civil Action No. 1:061151-ODF, Order attached hereto as Ex. "C," at 7 (order granting motion to dismiss noting that "the Supreme Court in *Twombly* heightened the pleading standard for complaints attacked by a Rule 12(b)(6) motion to dismiss.")

The Federal Circuit has considered the application of the *Twombly* standard in a patent infringement case.[2]  In *McZeal v. Sprint Nextel Corp.*, No. 2006-1548, F.3d, 2007 U.S. App. LEXIS 22025 (Fed. Cir. Sept. 14, 2007) the federal circuit vacated the dismissal of McZeal's complaint finding that he had pled sufficient facts that support a claim of direct infringement.  *Id*. at *5, *8-9.  However, McZeal was a *pro se* plaintiff who was entitled to "leeway on procedural matters, such as pleading requirements."  *Id*.  Even with the reduced standard afforded *pro se* litigant, however, McZeal made a greater factual "showing" in support of his infringement claims than does Sikes.  McZeal identified the infringing instrumentality ("the defendant's International Walkie Talkie machine physically have [sic] or perform all of the basic elements contained in the patent claims of the plaintiff"), explained how it infringed ("purports to provide International Walkie Talkie® service or global wireless Voice over Internet Protocol (VoIp) communications"), and even specified that the nature of what he believe was infringement by equivalents ("[w]hen used as any wireless apparatus over the internet or data network [,] telephone infringes plaintiff's patent via the Doctrine of Equivalents").  *Id*.

In striking contrast, Sikes alleges only that Defendants violate "one or more claims" of Sikes' two patents "(literally and/or under the doctrine of equivalents)

---

[2]     The Eleventh Circuit has not yet considered the issue.

by making, using, advertising, promoting, marketing, selling and offering for sale Vidalia's convection-based cooking grills, which infringe at least one claim" of the patents. Complaint at ¶¶ 51, 56. These bare-bones allegations do not fairly put Defendants on notice of Sikes' claims.

> B.   Application of *Twombly* and Rules 8 and 12(b)(6) to the Complaint Mandate a Dismissal.

In its Complaint, Sikes states that the "grills manufactured and sold by Vidalia … infringes (*sic*) at least one claim of the '964 patent and at least one claim of the '278 patent." Complaint, ¶ 46. Sikes never expands on these allegations in the Complaint. Together, the '964 patent and the '278 patent include 32 different claims, of which nine are independent claims. See Taylor Dec., Ex. "B" hereto, at Exs. "1" and "3". While these independent claims have many common limitations, they each include different limitations. In addition, Vidalia markets and sells four different models of grills. Declaration of Timothy Montgomery ("Montgomery Dec."), attached hereto as Exhibit "A," at ¶ 3. The complaint completely fails to state which of the Vidalia grills infringe which independent claim, and in what way the infringement occurs.

The Complaint merely presents a formulaic recitation of the elements of the cause of action for patent infringement. The allegations are not facts; rather, they are legal conclusions. The Complaint gives no indication as to which of the claims are alleged to be infringed and it gives no indication as to which models are alleged

to be infringing.  Sikes has merely alleged that it owns two patents and that an unspecified grill manufactured by Vidalia and distributed and sold by the Defendants infringes the patents in some unspecified way.  As such, the Complaint does nothing to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1965.

For this reason, the complaint fails to pass muster under the minimum standards set by the Supreme Court for pleading and, thus, Sikes has failed to state a claim upon which relief may be granted.  The Court should, pursuant to Fed.R.Civ.P. 12(b)(6), dismiss the present action with prejudice.

II.    <u>None of the Vidalia Grills Infringe any of the Sikes Patents as a Matter of Law</u>.

    A.    <u>Legal Standards</u>.

        1.    <u>Rule 12(d) Permits the Court to Consider Evidence Outside the Pleadings and Dismiss the Case Pursuant to Rule 56</u>.

Fed.R.Civ.P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56.  All parties shall be given reasonable opportunity to present all the material that is pertinent to the motion."

Applying principles of patent construction to the patents-in-suit and to the accused Vidalia grills, it is apparent that the Vidalia grills are not infringing.  This

matter can be decided by the Court at this early stage without the need for costly and time-consuming litigation. Thus, should the Court not grant Defendants' Rule 12(b)(6) motion, it should consider the evidence submitted herewith and grant summary judgment to Defendants as to all of Sikes' claims.

2.    Patent Claims.

The patent statute grants the patentee the right to exclude others from making, using or selling a claimed invention in the United States during the term of the patent. 35 U.S.C. § 271(a). If one violates this right, one is said to "infringe" the patent.

The protection provided to a patent holder by a patent is defined by the claims of the patent. To infringe a patent, the defendant must have "practiced each and every element of the claimed invention…. [L]iability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).

Infringement is measured against the "patented invention," 35 U.S.C. § 271(a), and patent claims must particularly point out and distinctly claim what the inventor regards as his invention, 35 U.S.C. § 112. "The primary purpose of [this] requirement is to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their [respective] rights."

*General Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938). Thus, "where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, ... the notice function of the claim is best served by adopting the narrower meaning." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F3d 1573, 1581 (Fed. Cir. 1996).

A patent claim has three parts. The "preamble," or introductory statement, names the invention being claimed. The "transition," which is usually a single word such as "comprising," notifies the reader that what follows is what is claimed by the patentee. The "body" of the claim, which includes everything after the transition, sets out the limitations of the invention. The body often contains a series of individual elements that, taken together, define the invention that is protected.

Typically, two forms of claims are found in patents: independent claims, which usually take the form "A device, *comprising* ...," and dependent claims, which usually take the form "The device of claim X, *further comprising* ...," where X is a reference to another claim. An independent claim stands alone and includes all the limitations of an invention. An independent claim does not require reference to any other claim to make it complete. A dependent claim, on the other hand, is said to "depend from" another claim. It incorporates all of the limitations

-10-

of the other claim from which it depends and adds additional limitations that must also be present for infringement.   A dependent claim is, therefore, necessarily narrower in scope than the independent claim from which it depends.

3.    <u>Patent Claim Construction</u>.

Two steps must be followed in determining if literal infringement exists. First, the meaning and scope of each asserted claim of the patent is determined. This is known as "construing" or "interpreting" the claim.  Such construction is done as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  The terms used in the claims of a patent should be construed as they would be by those skilled in the art. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985).  To determine the proper scope of a claim, the meaning of each of the terms used in the claim must be understood in light of the specification, the prosecution history, and the prior art. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991).  "When the meaning of key terms of claims is disputed ... reference may be had to the specification, the prosecution history, prior art, and other claims." *Id*.

Once the meaning of each term in a claim has been ascertained, then infringement is determined by comparing the accused product with the limitations set forth in that claim.  Literal infringement of the claim in a patent requires that the accused device literally employ each and every element of that claim.  *SRI*

*International v. Matsushita Electric Corp. of America*, 775 F.2d 1107 (Fed. Cir. 1985), <u>see</u>, <u>also</u>, *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1371 (Fed. Cir. 2005).

Dictionaries may be used to help determine the meaning of claim terms. However, "[i]n construing claim terms, the general meanings gleaned from reference sources, such as dictionaries, must always be compared against the use of the terms in context, and the intrinsic record must always be consulted to identify which of the different possible dictionary meanings is most consistent with the use of the words by the inventor." *Brookhill-Wilk 1, LLC, v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed.Cir. 2003).

Statements made by the applicant of a patent application can critically limit patent claims. When the description in a patent application expressly distinguishes over prior art and does not identify anything in the prosecution history contrary to those statements then the applicant has expressly disavowed the distinguished prior art. *O.I. Corp. v. Tekmar Co. Inc.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997), <u>see</u>, <u>also</u>, *Alza Corp. v. Mylan Laboratories, Inc.,* 391 F.3d 1365, 1371 (Fed. Cir. 2004). "The fact that an examiner placed no reliance on an applicant's statement distinguishing prior art does not mean that the statement is inconsequential for purposes of claim construction." *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1461 (Fed.Cir. 1998).

-12-

Generally, patent claims are not limited to the embodiments of the invention disclosed in the specification of the patent. However, when a claim term is not a general term of art and the patent specification discloses only a single embodiment then the term should not be construed more broadly than the embodiment shown in the specification. See, *General American Transp. Corp. v. Cryo-Trans, Inc.,* 93 F.3d 766, 770 (Fed. Cir. 1996).

Certain claim elements may be phrased in the form of a "means for" performing a function. Such phrasing triggers 35 U.S.C. § 112, ¶ 6. In analyzing infringement under § 112, ¶ 6, we "must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp. v. Durand-Wayland, Inc*, 833 F.2d 931, 934 (Fed. Cir. 1987) *cert. denied* 108 S.Ct. 1226 (1988) (emphasis in the original). Thus, literal infringement of a claim containing a means-plus-function clause requires that the accused device perform the identical function as that identified in the means clause and do so with structure that is the same as or equivalent to that disclosed in the specification. *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed. Cir. 1993), *see also, Micro Chem. Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997).

-13-

When performing a structural equivalents analysis of means-plus-function elements, "a finding of non-equivalence ... should preclude a contrary finding under the doctrine of equivalents." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 46 USPQ2d 1752, 1758 (Fed. Cir. 1998). Therefore, if an accused device is found not to infringe a claim employing means-plus-function elements either because the accused device fails to perform the function recited in the claim, or because the means employed by the accused device to accomplish the recited function is not a structural equivalent to the means disclosed in the patent specification, then the doctrine of equivalents may not be used to bring the accused into the scope of the claim.

In a means-plus-function analysis, it is important to separate the *functional* analysis from the *structural* analysis. Just because an accused object might accomplish the same function of an object disclosed in a patent does not mean that the accused object is structurally equivalent to the disclosed object. Functional equivalence is immaterial to the structural equivalence analysis. *Id*.

    4.   <u>Infringement Under the Doctrine of Equivalents</u>.

If a patent owner is unable to prove literal infringement, the law permits an attempt to establish infringement under the doctrine of equivalents. The purpose of the doctrine of equivalents is to prevent the turning of the patent grant "into a hollow and useless thing" if the patentee is held to the precise claim language used

-14-

in the patent. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950). The doctrine considers whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson v. Hilton Davis Chemical*, 117 S.Ct. 1040, 1054, 41 U.S.P.Q.2d 1865, 1875 (1997). One method of analysis under which infringement which has been determined for many years under the doctrine of equivalents is to establish whether the accused device performs substantially the same function, in the same way, to achieve the same result as the claimed invention (the "function/way/result" test). *Graver Tank, supra.* "That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially different way." *Perkin Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1531 n. 6 (Fed. Cir. 1987). Under the doctrine of equivalents, an accused device and a claimed invention cannot work in substantially the same way if a limitation of the claimed invention is missing from the accused device. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 867 F.2d 1572, 1577 (Fed. Cir. 1989).

The doctrine of equivalents is not designed to permit a claim expansion that would encompass more than an insubstantial change. *Perkin Elmer Corp.* at 1531. For example, under the doctrine of equivalents, a court cannot "convert a multi-

limitation claim to one of [fewer] limitations to support a finding of equivalency." *Dolly, Inc. v. Spalding & Evenflo Co.*, 16 F.3d 394, 399 (Fed. Cir. 1994) (quoting *Perkin-Elmer Corp.*, *supra*). Furthermore, as stated in *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991), "application of the doctrine of equivalents is the exception, however, not the rule."

The function/way/result test is one way set forth by current case law to analyze equivalence, but it is not the exclusive test. One must perform an analysis of the role played by each element of a claim in the context of the specific patent claim to determine whether a substitute element matches the function, way and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element. *Warner-Jenkinson*, 117 S.Ct. at 1054.

Prosecution history estoppel is one tool that prevents the doctrine of equivalents from vitiating the notice function of claims. *Charles Greiner & Co. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1036, 22 USPQ2d 1526, 1529-30 (Fed. Cir. 1992). Actions by the patentee, including claim amendments and arguments made before the Patent Office, may give rise to prosecution history estoppel. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376-77, 50 USPQ2d 1033, 1036 (Fed. Cir. 1999). "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has

-16-

been relinquished during the prosecution of its patent application." *Id*. at 1376, 50 USPQ2d at 1036. Therefore, "[t]he doctrine of equivalents is subservient to . . . [prosecution history] estoppel." *Autogiro Co. v. United States*, 384 F.2d 391, 400-01, 155 USPQ 697, 705 (Ct. Cl. 1967). The logic of prosecution history estoppel is that the patentee, during prosecution, has created a record that fairly notifies the public that the patentee has surrendered the right to claim particular matter as within the reach of the patent.

Moreover, if one has amended a claim without specific explanation as to the reason for the amendment, there is a rebuttable presumption that the claim cannot be expanded under the doctrine of equivalents and the patentee bears the burden of showing that the amendment does not surrender the particular equivalent in question. *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002). "[T]he interpretation of the patent must begin with its literal claims, and the prosecution history is relevant to construing those claims. When the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed. In those instances, however, the patentee still might rebut the presumption that estoppel bars a claim of equivalence." *Id.* at 741.

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 117 S. Ct. at 1049, 41 USPQ2d at 1871.

### 5.    Infringement of Dependent Claims.

Because a dependent claim incorporates all of the limitations of the independent claim from which it depends, for an accused device to infringe a dependent claim it must employ every element of both the dependent claim *and* the independent claim from which the dependent claim depends.   Generally, "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 10 U.S.P.Q.2d 1201, 1208 (Fed. Cir. 1989).

### B.    The Grills Marketed and Sold by Defendants do not Infringe U.S. Patent No. 6,038,964.

The '964 patent includes 24 claims, of which claims 1, 4, 9, 16, 17 and 23 are independent claims.   See Taylor Dec., Ex. "B" hereto, at Ex. "1."   Each of these independent claims recites at least the following two elements that are completely absent from the Vidalia Grills: (1) a baffle; and (2) means for creating an air flow that is coupled to an air outlet.

### 1.    The Baffle Element Claimed by Sikes in the '964 Patent is not Present in the Vidalia Grills.

a.  <u>Construction of the Baffle Element in the '964 Patent</u>.

The independent claims each recite the element of a baffle.  <u>See</u> Taylor Dec., Ex. "B" hereto.  While there are slight differences in which the baffle element is recited from claim to claim (*e.g.*, claims 2, 4, 17 and 23 each specify that the baffle is hollow, while claims 1, 9 and 16 do not), each independent claim expressly recites that the baffle separates the cabinet interior into a heating chamber and a cooking chamber.

The '964 patent discloses only one embodiment of the baffle.  As shown in FIGS. 1 and 5-7, the baffle (80) is clearly a vertical wall that extends from the bottom of the cabinet almost to the top of the cabinet.  The specification makes it clear that the baffle insulates the cooking chamber from the heating chamber ('964 patent, col. 3, ll. 45-52) and that the cooking chamber is defined by the side surface of the baffle ('964 patent, col. 3, ll. 53-56).  The '964 patent specification is also explicit in stating "[i]n each of these embodiments, the insulating baffle 80 is positioned *between* the heating chamber 40 and the cooking chamber 60…" ('964 patent, col. 4, ll. 58-60).

The prosecution history of the '964 patent[3] shows that all of the original independent claims were amended to include limitations specifying that the baffle separates the cooking chamber from the heating chamber. (Taylor Dec., Ex. "B"

---

[3]    The prosecution history is attached as Ex. "2" to the Taylor Dec., Ex. "B" hereto.

hereto, at Ex. "2", Amendment A.)    The applicant stated that the claims were amended "to more particularly define the relationship between the cooking chamber, the heating chamber, and the baffle" in an attempt to overcome a claim rejection by the Patent Office based on a prior art reference.  *Id.*

   b.  Application of the Baffle Element to the Vidalia Grills.

   None of the Vidalia grills include any sort of baffle.  Montgomery Dec., Ex. "A" hereto.    The Montgomery Declaration, Ex. "A" hereto, also includes two photographs and a drawing of one of the Vidalia grills.    Lacking a baffle, none of the Vidalia grills literally infringe the '964 patent.

   Given the fact that the applicant in the '964 patent amended all of the independent claims expressly to define more precisely the nature of the baffle element, and given that the applicant presented arguments regarding the importance of the baffle element to distinguish the cited prior art, it is clear that the applicant surrendered the right to apply the doctrine of equivalents to products lacking a baffle under the doctrine of prosecution history estoppel.  *See, e.g., Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. at 741.

   Even if the doctrine of equivalents were available to Sikes, the Vidalia grill simply does not include any equivalent to the baffle element.  The function of the baffle is to insulate the heating chamber from the cooking chamber and to define the air passage connecting the two chambers.  The Vidalia grills do not separate

-20-

one side from the other and nothing creates an air passage of the type recited in the '964 patent. Given that these functions are absent from the Vidalia grills, they cannot infringe the '964 patent under the doctrine of equivalents.

This reason is sufficient, by itself, to rule that the Vidalia grills do not infringe any claim of the '964 patent as a matter of law. Accordingly, judgment for Defendants as a matter of law is appropriate.

2.    The Means for Creating an Air Flow Element Also Supports a Finding of No Infringement by the Vidalia Grills.

None of the Vidalia grills include any sort of "means for creating an air-flow…being coupled to the air outlet," as recited in each of the independent claims of the '964 patent. As this element is recited in "means-plus-function" language, it must be interpreted so as to be limited by the structural elements disclosed in the specification that achieve the claimed function. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 46 U.S.P.Q.2d at 1758.

The specification discloses only two structures that achieve the "creating an air-flow" function: an external draft chimney (item 71 in FIG. 1) and a fan (item 77 in FIG. 6). The written description fails to disclose any other structure that could achieve the claimed function. None of the Vidalia grills have anything coupled to an air outlet that creates an air flow, much less do they include any sort of draft chimney or fan. Montgomery Dec., Ex. "A" hereto, ¶¶ 9-10.

-21-

This reason is also sufficient, by itself, to rule that the Vidalia grills do not infringe any claim of the '964 patent as a matter of law.

> B.    The Grills Marketed and Sold by Defendants Do not Infringe U.S. Patent No. 7,320,278.

The '278 patent includes only two independent claims: claims 1 and 8. See '278 Patent attached as Ex. "3" to the Taylor Dec., Ex. "B" hereto.[4] Both of these claims recite as a necessary element "a multi-walled baffle positioned between the heating chamber and the cooking chamber."  The Figures show a baffle (_see, e.g.,_ item 18 in FIGS. 1-4) that appears identical to the baffle shown in the '964 patent, with the only exception being FIG. 3B, which shows a baffle that is identical to all of the other baffles except that it is single-walled rather than multi-walled.

As demonstrated with respect to the '964 patent, the Vidalia grills do not include any sort of baffle, nor do they include any equivalent to a baffle.  This reason is sufficient, by itself, to rule that the Vidalia grills do not infringe any claim of the '278 patent as a matter of law.

## CONCLUSION

Sikes' complaint is nothing more than a formulaic recitation of the elements of a patent infringement cause of action.  The complaint fails to meet the standard

---

[4]    The prosecution history of the '278 patent is attached to the Taylor Dec. Ex. "B" hereto, as Ex. "4".

of Rule 8 as articulated in *Twombly*.   Accordingly, the complaint should be dismissed pursuant to Rule 12(b)(6).

Should the Court determine that Sikes' complaint is adequately pled, Defendants are nevertheless entitled to judgment as a matter of law under Rule 12(d) and Rule 56.  The Vidalia grills do not contain the baffle element recited in the '964 or the '278 patents.  Further, the Vidalia grills do not contain the means for creating an air flow element recited in the '964 patent.

Accordingly, Defendants ask this Court to dismiss the Complaint pursuant to Rule 12(b)(6) or, alternatively, to grant Defendants judgment as a matter of law pursuant to Rule 12(d) and Rule 56.

Respectfully submitted,

/s/ Scott E. Taylor
Scott E. Taylor
Georgia Bar No. 785596
scott.taylor@agg.com
Stephen M. Dorvee
Georgia Bar No. 226989
stephen.dorvee@agg.com
J. Tucker Barr
Georgia Bar No. 140868
tucker.barr@agg.com

ARNALL GOLDEN GREGORY LLP
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363
Tel:   (404) 873-8728
Fax:   (404) 873-8729

/s/ Bryan W. Bockhop
Bryan W. Bockhop
Georgia Bar No. 065127
bwb@bockpatent.com

BOCKHOP & ASSOCIATES, LLC
2375 Mossy Branch Drive
Snellville, Georgia 30078
Tel:   (678) 919-1075
Fax:   (678) 609-1483

Counsel for Defendants

-24-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SIKES COOKERS & GRILL, INC.,    }

        }

    Plaintiff,    }    CIVIL ACTION FILE

        }

v.    }    NO. 1:08-CV-0750-JOF

        }

VIDALIA OUTDOOR PRODUCTS,    }

    INC., *et al.,*    }

        }

    Defendants.    }

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Local Rule 7.1D, NDGa, I hereby certify that this pleading has been prepared in Times New Roman 14-Point font, one of the font and point selections approved by this Court in Local Rule 5.1B, NDGa.

This 18th day of April, 2008.

/s/ Scott E. Taylor
Scott E. Taylor
Georgia Bar No. 785596

2350286v2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SIKES COOKERS & GRILL, INC., | } | |
| | } | |
| Plaintiff, | } | CIVIL ACTION FILE |
| | } | |
| v. | } | NO. 1:08-CV-0750-JOF |
| | } | |
| VIDALIA OUTDOOR PRODUCTS, | } | |
| INC., *et al.,* | } | |
| | } | |
| Defendants. | } | |

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULES 12(d) AND 56** upon all counsel of record by ECF filing and by causing a true and correct copy thereof to be deposited with the U.S. Postal Service as first class mail, postage prepaid, in an envelope addressed as follows:

Steven G. Hill, Esq.
Peter F. Schoenthaler, Esq.
Eric G. Maurer, Esq.
HILL, KERTSCHER & WHARTON LLP
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia 30339

2350286v2

This 18th day of April, 2008.

/s/ Scott E. Taylor
Scott E. Taylor
Georgia Bar No. 785596

Counsel for Defendants

2350286v2